**Affirmed and Memorandum Opinion filed August 14, 2014.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-13-00266-CR

_____

**MARK ANTHONY KENTISH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1379634

## M E M O R A N D U M    O P I N I O N

A jury convicted appellant Mark Anthony Kentish of compelling prostitution of a child under the age of 18. *See* Tex. Penal Code Ann. §§ 43.02(a)(1), 43.05 (Vernon Supp. 2013). The jury assessed punishment at 45 years' confinement and a $10,000 fine. Appellant challenges his conviction on grounds that (1) the evidence is legally insufficient to prove he committed the offense; (2) the trial court erred by admitting into evidence hearsay testimony from a sexual assault

nurse examiner; (3) the trial court erred by admitting into evidence expert testimony from a psychologist; and (4) the trial court erred by admitting into evidence State's Exhibits Nos. 3 and 4. We affirm.

## BACKGROUND

L.B.[1] testified that she met appellant and his girlfriend, Christina Tolliver, at a store in Houston in April 2012 while L.B. was homeless after having run away from a Child Protective Services (CPS) shelter. L.B. was 15 years old when she met appellant.

L.B. accepted appellant's offer to drive her to his house so that she could shower and change clothes. Once there, appellant gave her a dress to wear. Despite having told L.B. earlier that he would bring her back to the store, appellant refused to do so after she had showered and changed. L.B. testified that she was afraid to walk away from appellant's house on her own because of the rough neighborhood, and so she began living with appellant and Tolliver. R.F.K., who was 19 at the time of trial, arrived at appellant's house soon after L.B. did; R.F.K. also lived there with appellant, Tolliver, and L.B.

Appellant asked L.B. to give him her full name and birthdate so that he could locate her if the police arrested her or returned her to CPS. L.B. gave him the correct information, which he wrote down on a piece of paper that he kept in his wallet. He gave L.B. the name and social security number of another person who was over 18 to use if the police stopped her.

---

[1] We refer to L.B. and another witness, R.F.K., by their initials in order to protect their identities.

L.B testified that she soon began working as a prostitute for appellant, who used text messages sent via cell phone to (1) find customers to have sex with L.B.; and then (2) schedule the encounters at hourly motels near appellant's house. Appellant also placed internet advertisements on craigslist to find customers to have sex with L.B. In addition, L.B. testified that appellant took L.B. to specific physical locations in Houston known for prostitution where she would "walk the track" in an effort to find customers.

According to R.F.K.'s trial testimony, R.F.K. worked as a prostitute for appellant as well. R.F.K. also described how appellant would find customers when R.F.K. and L.B. worked the "track." R.F.K. testified that, acting at appellant's direction, she grabbed L.B. by the hair, dragged L.B. back to appellant's house, and hit L.B. on one occasion when L.B. attempted to leave.

L.B. testified that appellant "was always the one telling us what to do and how to do it. He was the one with the phone that sent the text messages to the different people." L.B. testified that appellant collected payment before L.B. had sex with a customer located by appellant. L.B. also testified that she had unprotected sexual intercourse with appellant "every other day or every couple days" while she lived at his house.

At least two cell phones were in use while L.B. lived at appellant's house; appellant and Tolliver used both cell phones. L.B. did not have her own cell phone. L.B. answered "Yes" to a question asking whether appellant had "access to and ultimately control of all the phones."

L.B.'s circumstances came to the attention of authorities on May 12, 2012, when Metro Police Officer Rigoberto Cortez stopped a car driven by appellant on Interstate Highway 59 due to an expired license plate. L.B. was riding in the car's

3

front passenger seat, and Tolliver was a passenger in the back seat.

Appellant and Tolliver provided identification to Cortez during the traffic stop as requested. When Cortez asked L.B. for identification, she appeared nervous and did not respond. Cortez then handed L.B. a piece of piece of paper and asked her to write her name and date of birth. L.B. drew a circle on the paper and handed it back to Cortez, which prompted him to ask appellant for L.B.'s name. Appellant said he did not know her name.

Cortez asked L.B. to step out of the vehicle and told her she had to identify herself. L.B. refused, after which Cortez placed her in the back seat of his patrol car. While seated in the patrol car, L.B. told Cortez that her name was Yasmin Rosas. Cortez then checked for outstanding warrants on the car's occupants.

Cortez testified that L.B. appeared close to tears while sitting in the back of his patrol car. When he asked her what was wrong, L.B. responded: "It's not mine." After further questioning, L.B. told Cortez there was marijuana under the front passenger seat of appellant's car. Cortez called for backup; removed appellant and Tolliver from the car; and searched the car. Cortez found marijuana under the front passenger seat and showed it to appellant, who said it belonged to L.B. As Cortez questioned L.B. further, she told him her real name and birthdate; said she was a 15-year-old CPS runaway; and said appellant had been holding her to work as a prostitute for appellant.

Cortez then placed appellant and Tolliver in handcuffs along the side of Interstate Highway 59 and waited for another officer to arrive. When the officer arrived, Cortez placed L.B. in the backup officer's patrol car; placed appellant and Tolliver in his own patrol car; drove them to a nearby gas station parking lot; transferred Tolliver to the back seat of another patrol car; and questioned appellant

4

in the gas station parking lot.

According to Cortez, appellant admitted during further questioning in the parking lot that he knew L.B. was 15. Cortez testified that he asked if appellant knew L.B.'s name; appellant said he kept the information on a piece of paper in his wallet. Cortez obtained the wallet from appellant's back pocket, opened it, and found two pieces of paper. Both pieces of paper had L.B.'s name and birthdate on them, and notations that she was 15 years old; one piece of paper also had R.F.K.'s name, birthdate, and social security number on it, along with a notation that R.F.K. was 18.

Appellant denied compelling L.B. to work as a prostitute, but said he knew L.B. was a homeless prostitute who he had met a couple of weeks earlier and was trying to help. When appellant's car was inventoried, Cortez found a cell phone located in the driver's seat and a piece of paper containing information related to a craigslist posting. Cortez subsequently referred the case for further investigation to Officer Catherine Bartels of the Houston Police Department.

After search warrants were obtained, photographs and approximately 5,000 text messages were downloaded from the cell phone that was found in the driver's seat of appellant's car. The photographs included individual images of L.B., some of which were sexually explicit; they also included images of appellant simulating sexual intercourse with L.B. At trial, L.B. identified the cell phone recovered from appellant's car as a black touchscreen model belonging to Tolliver and used by appellant. Text messages and photographs downloaded from the cellphone were introduced into evidence at trial and published to the jury, who heard testimony that specific text messages were sent asking potential customers if they wanted to engage in sexual intercourse with L.B. for a specific price.

5

In addition to testimony from L.B., R.F.K, and Cortez, the jury heard testimony during the guilt-innocence phase of trial from Tuan Pham, an investigator with the Harris County District Attorney's Office who examined the contents of the cell phone found in appellant's vehicle; Houston Police Department Officer Catherine Bartels, a member of the Houston Child Exploitation Task Force; Tammy Herrera, a registered nurse and sexual assault nurse examiner at Texas Children's Hospital; and Daniella Madera, a staff psychologist at Harris County Children's Assessment Center.

## ANALYSIS

### I.    Sufficiency of the Evidence

A person commits the offense of compelling prostitution if he knowingly causes by any means a child younger than 18 to offer to engage, agree to engage, or to engage in sexual conduct for a fee regardless of whether he knew the child's age at the time of the offense.  Tex. Penal Code Ann. §§ 43.02(a)(1), 43.05 (Vernon Supp. 2013).

Appellant contends in his first issue that the evidence is insufficient to support his conviction for compelling prostitution because L.B. was not a credible witness; R.F.K.'s testimony was coerced by the State; and "[n]o evidence linked the sender of the texts to Appellant."

In conducting a sufficiency review we examine the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing

6

reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860.

As discussed above, the jury heard testimony from L.B. that at age 15 she worked as a prostitute for appellant, who used text messages and a craigslist advertisement to locate customers. L.B. testified that appellant controlled her activities and collected the money customers paid to have sex with L.B. In her testimony, L.B. described specific sexual encounters arranged by appellant. In one instance that began in a store parking lot, appellant told L.B. and R.F.K. to get into a truck driven by a man who had communicated with appellant. The man took L.B. and R.F.K. to a vacant rental house and had sexual intercourse with L.B. while R.F.K. acted as a lookout. R.F.K. described the same encounter in her testimony. The man paid $100 after having sexual intercourse with L.B. at the vacant house, which R.F.K collected and gave to appellant. L.B. also described having multiple sexual encounters at a hotel near appellant's house with a man named Juan that were set up by appellant, Tolliver, and R.F.K. In her testimony, R.F.K. described an instance in which she acted at appellant's direction to grab L.B. by her hair, drag L.B. back to appellant's house, and hit L.B. when L.B. attempted to leave.

Appellant contends that L.B.'s testimony is not credible because L.B. and Cortez testified that L.B. lied to Cortez during the May 12, 2012 traffic stop about her identity and her possession of the marijuana found in appellant's car. He further contends that R.F.K.'s testimony is not credible because she testified that (1) she had been held in jail for more than a week past her release date to ensure that she testified at trial; and (2) she had not been charged with prostitution, compelling prostitution, or other crimes in connection with her activities involving appellant and L.B. According to appellant's brief, R.F.K. "admitted that she believed that the prosecutor would not charge her with the felony of being a party

7

to the Sexual Assault of a Child or the misdemeanor of Prostitution if she testified against Appellant in trial." Although the record falls short of containing such an admission, the larger point is that appellant's attacks on the testimony of L.B. and R.F.K. focus on credibility determinations that rest exclusively with the jury – not with this court. *See, e.g., Isassi v. State*, 330 S.W.3d 63, 638 (Tex. Crim. App. 2010) (jury is the exclusive judge of witness credibility and weight of the evidence). Therefore, appellant's credibility-based attacks on the testimony of L.B. and R.F.K. provide no permissible basis for disturbing the trial court's judgment based on the jury's verdict.

We likewise reject appellant's contention that the evidence is insufficient because "[n]o evidence linked the sender of the texts to Appellant." L.B. testified that appellant "was the one with the phone that sent the text messages to the different people;" she also testified that appellant had access to and control of all phones that were used to locate customers and schedule sexual encounters between those customers and L.B. The downloaded texts and pictures introduced into evidence came from a cell phone recovered from appellant's car; L.B. identified this cell phone as a black touchscreen model belonging to Tolliver and used by appellant. In any event, sufficient evidence to support appellant's conviction exists independent of the cell phone's contents; this independent evidence is based on L.B.'s and R.F.K.'s testimony describing a sexual encounter between a customer and L.B. in a vacant house, which was arranged by appellant and for which appellant received payment.

Because a rational trier of fact could have found the essential elements of compelling prostitution beyond a reasonable doubt on this record, we overrule appellant's first issue.

8

## II.    Admission of Nurse Tammy Herrera's Testimony

Appellant contends in his second issue that the trial court erred by allowing registered nurse Tammy Herrera, a sexual assault nurse examiner at Texas Children's Hospital in Houston, to testify about hearsay statements "made by [L. B.] to her about Appellant pimping her and about Appellant having sex with her . . . ." Appellant continues: "The trial court overruled Appellant's hearsay objection and ruled that Herrera's testimony was an exception to hearsay as a statement made for purposes of medical diagnosis." We review the admission or exclusion of evidence under an abuse-of-discretion standard. *See, e.g., Sheffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006).

Herrera examined L. B. on May 13, 2012, after police and a CPS worker brought L. B. to Texas Children's Hospital. Herrera testified that during this examination L.B. "said [appellant] . . . was her pimp." Herrera testified: "So [L.B.] . . . told me he was pimping me at a motel near his house. I would go to the motel room and people would set up appointments." Herrera continued: "She reported to me that she didn't have an exact number of how many people she would have to sleep with in a day, but that she had to make [$]200 to $300 a day." Herrera also testified that L.B. said appellant had sexual intercourse with L.B. without using a condom.

Appellant contends the trial court abused its discretion in admitting hearsay testimony from Herrera regarding L.B.'s statements that appellant "was her pimp" and was "pimping" her, and that she had unprotected sexual intercourse with appellant. According to appellant, the State failed to satisfy the requirements for admission of these statements under Texas Rule of Evidence 803(4) as statements made for purposes of medical diagnosis and treatment. The State contends that (1) appellant waived this complaint because the arguments raised on appeal do not

comport with the objection raised during trial; (2) the challenged statements are admissible under Rule 803(4); and (3) any asserted error in the admission of the challenged statements is harmless.

We conclude that any asserted error in admitting the challenged hearsay testimony is harmless even assuming for argument's sake that error was preserved, and that the trial court abused its discretion in admitting the challenged portions of Herrera's testimony.

Because this asserted error does not implicate constitutional rights, Texas Rule of Appellate Procedure 44.2(b) governs the harm analysis. *See, e.g., Taylor v. State*, 268 S.W.3d 571, 592-93 (Tex. Crim. App. 2008). A non-constitutional error "that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). Under this standard, such an error "is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict." *Taylor*, 268 S.W.3d at 592 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). "We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect." *Taylor,* 268 S.W.3d at 592 (citing *Johnson v State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

Appellant's brief does not identify any harm from the admission of the challenged testimony. We conclude based on an examination of the record that the asserted error in admitting Herrera's challenged testimony did not influence the jury, or had at most a slight effect, because the challenged testimony is cumulative of substantial testimony from L.B. that addressed the same points and was admitted without objection. L.B testified that she worked as a prostitute for appellant; he used a craigslist advertisement and text messages to find customers to have sex with L.B., and received payment for L.B.'s sexual encounters with

10

customers. L.B. testified that appellant took L.B. to specific physical locations in Houston known for prostitution to find customers. L.B. answered "Yes" to a question asking, "Did you ever have a sexual relationship with [appellant]?" She answered "None" when asked, "What, if any, protection or condom would he use when he had sex with you?" R.F.K also testified that appellant was her "pimp," and that L.B. worked as a prostitute for appellant. In light of this record, we conclude that any asserted error in the admission of Herrera's challenged testimony containing hearsay statements from L.B. "does not affect substantial rights [and] must be disregarded." *See* Tex. R. App. P. 44.2(b).

We overrule appellant's second issue.

### III. Admission of Daniella Madera's Expert Testimony

Appellant contends on appeal that the trial court erred by allowing Daniela Madera, a Ph.D. staff psychologist at the Children's Assessment Center, to testify about "the general psychological concepts of victims of sexual abuse instead of limiting her testimony to whether or not Appellant had sexually abused [L.B.]" He further contends on appeal that (1) "Madera's testimony as an expert is not reliable because she never examined [L.B.];" and (2) this testimony is not relevant "because Madera did not know if Appellant was the perpetrator of her alleged sexual abuse." Appellant does not challenge Madera's qualifications to testify as an expert regarding sexual abuse of children.

We review the admission of expert testimony under an abuse of discretion standard. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will not reverse unless we determine that the trial court's ruling was so wrong as to fall outside the zone within which reasonable people might disagree. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

11

Texas Rule of Evidence 702 allows a witness qualified by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding or determining a fact issue. Before admitting expert testimony under Rule 702, the trial court must be satisfied that (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010), *cert. denied*, 132 S. Ct. 128 (2011). These requirements are commonly referred to as qualifications, reliability, and relevance. *Id.* (citing *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006)). Each requirement raises distinct questions and issues, and an objection based on one requirement does not preserve error as to another. *Shaw v. State*, 329 S.W.3d 645, 655–56 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Madera answered "Yes" to a question from the State asking: "[D]o you think that it would help the jury in kind of understanding some of the background and dynamics of sexual abuse if you were able to talk about some of the psychological concepts of victims of sexual abuse?" The State later asked: "Now, can you talk to me generally about what type of child is most likely to be targeted as a victim of sexual abuse?" Appellant's trial counsel then objected: "Judge, at this point, I'm going to object to any generalizations testimony unless it specifically relates to this case." After further dialogue between the trial court and the State, the trial court stated: "All right. I'll allow her to give her opinion."

Madera listened to the entirety of L.B.'s testimony. Madera opined that sexual abuse often is directed towards children who are vulnerable because they come from dysfunctional homes, are neglected, have a low I.Q., or suffer from a

12

disability. She also opined that children and adolescents are more likely to be victims of sexual abuse when they are in the CPS system and lack family support; are runaways; and do not "currently have an adult that they're close with or that they trust." Madera testified that "they usually come from an abusive situation or a neglectful situation already." She further testified that sexual abuse victims usually display symptoms such as depression, including self-harming behavior; anxiety; sexualized behavior; substance abuse; and distrust of police and anyone else in an authority role. Madella stated that L.B.'s testimony reflected these symptoms.

The State then asked this question: "Will these girls just leave the home that they're in with the pimp . . . to try to find another home based off your training and experience?" Appellant's trial counsel objected: "Judge, I'm going to object again to these generalizations. We're once again getting into the generalizations instead of focusing on the facts of this specific case." The trial court overruled this objection, and Madera testified that adolescents in this circumstance do not attempt to leave because of fear and a lack of anywhere else to go. She also testified that a pimp can engage in "grooming," which she defined as "any sort of behavior that a perpetrator uses with the later intent to sexually abuse the child." She continued: "[I]t could like anything from attention, money, time spent, trips, clothing, anything that is given . . . with a later intent to abuse that child."

During cross-examination, Madera testified that L.B. had never visited the Children's Assessment Center and Madera had never treated L.B or spoken with her.

Based on this record, the objections during trial comport with appellant's relevance complaint on appeal that the trial court erred by allowing Madera to testify about "the general psychological concepts of victims of sexual abuse instead

13

of limiting her testimony to whether or not Appellant had sexually abused [L. B.]." The trial objections did not preserve the additional complaint now raised on appeal that this testimony is "not reliable because [Madera] . . . never examined [L.B.]." We conclude that the trial court acted within its discretion in admitting Madera's expert testimony because this testimony was relevant to the jury's understanding of L.B.'s interactions with appellant, the consequences, and the reasons she remained in an abusive situation. *See Morris v. State*, 361 S.W.3d 649, 667-68 (Tex. Crim. App. 2011) (grooming of children for sexual abuse is a legitimate expert testimony subject); *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993) (expert testimony concerning behavioral characteristics of sexually abused children was admissible); *cf. Fielder v. State*, 756 S.W.2d 309, 321 (Tex. Crim. App. 1988) (expert testimony was relevant and admissible to explain why spouse remained in abusive relationship).

We overrule appellant's third issue.

## IV.    Admission of State's Exhibits Nos. 3 and 4

Appellant contends in his fourth issue that the trial court erred in admitting State's Exhibits Nos. 3 and 4 into evidence at trial because (1) Officer Cortez obtained them based on his questioning of appellant in the gas station parking lot; and (2) appellant did not receive the warnings mandated by *Miranda v. Arizona*, 384 U.S. 436 (1966), and the Texas Code of Criminal Procedure during this questioning. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). We examine this determination under an abuse-of-discretion standard. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005).

State's Exhibit No. 3 is a handwritten note containing R.F.K's name, social security number, and date of birth; it also contains L.B.'s name and date of birth. This exhibit reflects that R.F.K. was 18 and L.B. was 15. State's Exhibit No. 4 is a

14

handwritten note containing L.B.'s name and date of birth, and shows her age as 15 years old.

*Miranda* and Article 38.22 require warnings when a person is subject to "custodial interrogation." Tex. Code Crim. Proc. Ann. art. 38.22 § 2; *Miranda*, 384 U.S. at 444. "Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. A person is "in custody" if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).

Generally, a routine traffic stop does not place a person in custody for *Miranda* purposes. *State v. Ortiz,* 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). But a traffic stop may escalate from a non-custodial detention into a custodial detention when formal arrest ensues or a detainee's freedom of movement is curtailed to the degree associated with a formal arrest. *Id.* We evaluate whether a person has been detained to the degree associated with formal arrest on an ad-hoc, or case-by-case basis. *Id.*

Cortez testified that, after talking with L.B., he handcuffed appellant at the scene of the initial traffic stop and directed him to sit down on the shoulder of the roadway near a barrier. Cortez then placed appellant and Tolliver in his patrol car and drove them to a nearby gas station parking lot. According to Cortez, the ride to the gas station took about a minute; less than 5 minutes later, another patrol car arrived at the gas station and Cortez placed Tolliver in it; and within 10 minutes of placing Toliver in the other patrol car, Cortez returned to his own patrol car and questioned appellant. Cortez answered "Correct" to a question asking him: "So

15

you talked to him without advising him of his rights to remain silent; is that correct?"

Appellant's trial counsel asked Cortez: "So, he had his wallet in his back pocket, and as a result of that conversation, you obtained his wallet and then you opened the wallet; is that correct?" Cortez answered, "Yes." Appellant's trial counsel then asked: "And that's where you found State's Exhibits 3 and 4; is that correct?" Cortez answered, "Yes."

Appellant's trial counsel objected to the admission of these exhibits into evidence because Cortez obtained them based on questioning that occurred before appellant was warned under Article 38.22 and *Miranda.* The trial court overruled the objection because "[i]t doesn't appear that the Defendant was in custody at the time that the officer was talking to the Defendant."

Appellant contends on appeal that he was in custody because he was "handcuffed and sitting on the side of the highway;" he also contends that "the lengthy wait for the investigation to be moved to a nearby gas station was an unreasonable period of time to hold him." The State contends that appellant's detention amounted to an investigatory detention "because the length of the detention was reasonable for Cortez's morphing investigation" to address "the changing information he received and his need to investigate the offense." The State also contends that any asserted error was harmless.

Even if the admission of these exhibits violated *Miranda* and rises to the level of constitutional error, we nevertheless will affirm the conviction if we determine beyond a reasonable doubt that the alleged error did not contribute to appellant's conviction. Tex. R. App. P. 44.2(a); *see also Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (improper admission of evidence is harmless if the same or similar evidence is admitted without objection at another

16

point in the trial); *Campbell v. State*, 325 S.W.3d 223, 238-39 (Tex. App.—Fort Worth 2010, no pet.) (applying Rule 44.2(a) in determining that there was no harm from a violation of a defendant's right to receive *Miranda* warnings and declining to conduct a separate analysis of harm, relating to a violation of article 38.22, under Rule 44.2(b)).

Appellant does not discuss on appeal any claimed harm from the admission of the challenged exhibits. L.B. and R.F.K. both testified that appellant had pieces of paper in his wallet containing their correct names and ages. L.B. testified that appellant knew how old she was, her date of birth, and her full name. L.B. stated, "He told me to give it to him just in case, like, if I was taken to jail or if I would go to CPS, he could find me." In response to a question asking, "When did he find out you were only 15," L.B. testified: "He found it out when I first got there." R.F.K. also testified that appellant knew L.B.'s age. L.B. and R.F.K. both testified that L.B. worked as a prostitute for appellant, who made arrangements for L.B. to meet customers and received the proceeds from L.B.'s sexual encounters with customers. Based on this record, we conclude beyond a reasonable doubt that the alleged error in admitting State's Exhibits Nos. 3 and 4 did not contribute to appellant's conviction.

We overrule appellant's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.


/s/          William J. Boyce
             Justice

Panel consists of Justices Boyce, Christopher, and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).