

# Supreme Court of Kentucky

## 2008-SC-000918-I

**ERIC C. NORSWORTHY, MD**                                            APPELLANT

ON REVIEW FROM COURT OF APPEALS

V.                              CASE NO. 2008-CA-001717-I

JEFFERSON CIRCUIT COURT NO. 08-CI-008166

**KENTUCKY BOARD OF MEDICAL
LICENSURE (KBML)**                                                   APPELLEE

### OPINION AND ORDER
### DENYING INTERLOCUTORY RELIEF

Appellant, Eric C. Norsworthy, pursuant to CR 65.09, moves this

Court to vacate the Order entered by the Court of Appeals staying the

injunctive relief granted him by the Jefferson Circuit Court, pursuant to

CR 65.04. Having reviewed the motions of the parties and the record of

the case, this Court now denies the motion for the relief requested for

failure to show extraordinary cause.

### BACKGROUND

On May 7, 2008, a hearing officer conducted an administrative

hearing on the complaint issued by the Kentucky Board of Medical

Licensure (KBML) against Appellant. The complaint was filed alleging

Appellant committed sexual misconduct against a female patient by

grabbing her breast when she was awaiting treatment for bronchitis on

February 20, 2007. After considering all the evidence, including his

nineteen (19) year disciplinary history,[1] the officer recommended that Appellant's license be revoked as a result of his continued misconduct.

On July 17, 2008, Hearing Panel B of the KMBL took up the case for final action. Upon review, the Panel accepted all of the hearing officer's findings of fact and conclusions of law, but chose to modify the punishment. In lieu of a complete revocation, as recommended by the hearing officer, the Panel recommended a restriction limiting Appellant to practice on male patients only. To that end, the Board noted:

> The only sanction which will adequately protect the public is one which conclusively ensures that this licensee may never be permitted to enter into a physician-patient relationship with or to perform any medical procedure - evaluation, diagnosis, treatment - on any female patient during the remainder of his medical practice. If this can be

---

[1] In 1989 and 1990, a sixteen (16) year old female patient and her mother asserted that Appellant lifted the patient's breast out of her bra and fondled her breast in a way no other doctor had done. During this same investigation, two (2) other female patients asserted Appellant had sexual intercourse with them after giving them some medication. Appellant received a six (6) month suspension of his license followed by four and one-half (4 1/2) years probation.

In February 1993, a twenty-one (21) year old female patient alleged that Appellant, in addition to other sexual misconduct, cupped and massaged her breast while listening to her heartbeat. Appellant's probation was extended another five (5) years after this incident.

In February 2000, a local physician filed a grievance against Appellant, claiming Appellant conducted inappropriate breast examinations and unnecessary pelvic examinations on ten (10) female patients. Several of those patients claimed that Appellant fondled their breasts.

These complaints were reviewed by board consultants, who did not find sufficient information to prove that Appellant was actively fondling or sexually touching patients. The KBML held that the evidence may not establish inappropriate touching, but did question the medical necessity of various examinations conducted by Appellant on female patients. Accordingly, an Agreed Order was issued on May 16, 2002, subjecting Appellant to numerous restrictions and conditions, pertaining to female patients, for a period of five (5) years.

accomplished by a permanent restriction upon his medical license, then revocation may be avoided and he may be permitted to practice under this permanent restriction.

On July 24, 2008, the KBML issued the indefinite restriction on Appellant's license to practice medicine, limiting his practice to male patients only. The KBML took this action in view of Appellant's long history of improper conduct starting in 1989, over which time period, it received sixteen (16) complaints from female patients charging Appellant with a litany of troubling conduct, including sexual touching and sexual intercourse. Despite the Board's decision to allow Appellant to continue practicing medicine (when the recommendation given was to revoke his license), Appellant appealed the restriction of his license in Jefferson Circuit Court and also filed a motion for injunctive relief pending the result of his appeal.

On August 29, 2008, after only a ten (10) minute hearing at which Appellant called no witnesses and produced minimal evidence, the Jefferson Circuit Court granted Appellant's temporary injunction against the restriction under CR 65.04 and the three-part test from Maupin v. Stansbury, 575 S.W.2d 695 (Ky. App. 1978). The circuit court reasoned that restricting Appellant's ability to treat women would equate to an irreparable injury under Maupin because it was alleged that up to seventy (70) percent of his patients were women. Furthermore, the court

held that the restriction limited his ability to earn money, his ability to acquire new patients, as well as his ability to retain old patients.

The circuit court likewise found the existence of a substantial question under <u>Maupin</u>, which it deemed warranted the grant of the injunction. At issue were allegations by Appellant against the complaining patient of alleged drug use and an apparent improper attempt by Appellant to disclose the complainant's private medical records. The court reasoned that because there were questions about the drug use of the complainant/patient, the confidentiality of her medical records should not take precedence over a litigant's rights to discover exculpatory evidence. The court determined that because the complainant allegedly used prescription drugs, her credibility (or lack of it) gave rise to a substantial question of law as it related to the issuance of a temporary injunction and thus, Appellant might ultimately prevail on the merits.

Finally, in addressing the equities prong of <u>Maupin</u>, the circuit court held that the equities lay in favor of Appellant. The court reasoned that, even though protecting the public from physicians like Appellant is important, such considerations were insufficient to overcome the equities in his favor, which the court found to include: 1) the fact that no other complaints had been filed after the one in question (although it should be

4

noted that an additional grievance *was filed* on September 5, 2008);[2] 2) Appellant presented a petition of support with several hundred signatures; 3) a large support group of women in yellow t-shirts appeared in court with him;[3] 4) the County he practices in is a Health Professionals Shortage Area (HPSA); and 5) Appellant works for the Ohio County Jail and is the medical director for three (3) nursing homes in Ohio County. The circuit court held that the charges against Appellant were serious, but that the "status quo" of the past eighteen (18) months rendered the injunction appropriate here.[4]

Subsequent to the trial court's ruling, the KBML filed an appeal in the Court of Appeals, seeking a stay of the temporary injunction issued by the circuit court. The Court of Appeals held that the trial court abused its discretion when it determined, pursuant to CR 65.04, that immediate and irreparable injuries were present in this case and ordered that the temporary injunction order be stayed. Appellant now seeks additional review by this court.

## Analysis

---

[2]  This grievance was from a former co-worker who stated, "I left because I could no longer look into the eyes of the women he had sexually molested and be a part of that perverted office."

[3]  The trial court reasoned that because a large group of supporters, mainly women, had "come a long way" to support Appellant, he was entitled to the weight of equities in his favor.

[4]  We note that the trial court's opinion included some factual inconsistencies, including referencing Appellant as Dr. Ebert, and referencing the action as a motion for a stay of an emergency order of suspension.

Appellant argues that the Court of Appeals' stay of the trial court's grant of temporary injunction was improper and requests relief from this Court pursuant to CR 65.09. "Under CR 65.09 our review is limited to those cases which demonstrate *'extraordinary cause,'* and we have noted that 'abuse of discretion by the courts below can supply such cause.'" Price v. Paintsville Tourism Com'n, 261 S.W.3d 482, 483 (Ky. 2008) (quoting National Collegiate Athletic Association v. Lasege, 53 S.W.3d 77, 84 (Ky. 2001)) (emphasis added). Appellant's motion, however, does not meet this standard.

CR 65 governs injunctive relief in Kentucky. It states that a temporary injunction may be granted during the pendency of an action if it is clearly shown that the Appellant's rights are being, or will be, violated and the Appellant will suffer immediate and irreparable harm. See id.

> This rule has been construed as requiring the trial court to deny injunctive relief unless it finds (1) that the Appellant's position presents "a substantial question" on the underlying merits of the case, i.e. *that there is a substantial possibility that the Appellant will ultimately prevail*; (2) that the Appellant's remedy will be irreparably impaired absent the extraordinary relief; and (3) that an injunction will not be inequitable, i.e. will not unduly harm other parties or disserve the public. (internal citations omitted).

Price, 261 S.W.3d at 484 (emphasis added); see also Sturgeon Mining Co. v. Whymore Coal Co., Inc., 892 S.W.2d 591, 592 (Ky. 1995) (Rule 65

6

"requires that for a temporary injunction to be granted, it must be 'clearly shown . . . that the movant . . . will suffer immediate and irreparable injury, loss, or damage pending a final judgment in the action.'").

The trial court held that Appellant satisfied these elements; however, the Court of Appeals held, in its brief opinion, that the irreparable injury found by the trial court did not rise to the level needed to grant the injunction and that the trial court abused its discretion when it decided otherwise.

Having reviewed the complained of irreparable harm, the standards enunciated in <u>Maupin</u>, and having considered the Court of Appeals' terse determination, we agree with the Court of Appeals and find the stay of the temporary injunction proper for reasons that the trial court abused its discretion. However, we find it necessary to fully analyze this matter, pursuant to *all* the standards set forth in <u>Maupin.</u>

In the present matter, Appellant claims a temporary injunction is necessary and that - because he is a solo practitioner and the KBML restriction will allegedly take away seventy (70) percent of his clients - he will not be able to pay the salaries of his staff or all the costs of maintaining his business, amounting to irreparable harm.[5] In order to

---

[5] We note that Appellant is a solo practitioner of his own volition. He previously employed a doctor that was facing similar charges to Appellant, and that doctor was forced to resign. Moreover, another doctor decided he could no longer work in Appellant's office because, "he could no longer look into the eyes of the women he [Appellant] had sexually molested." That

7

obtain a preliminary injunction, the harm that would result in the absence of the injunction must be irreparable, not merely substantial. See Sampson, 415 U.S. at 61, 90 (1974).[6] Further, "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." Sampson, 415 U.S. 61, 90 (1974) (quoting Virginia Petroleum Jobbers Ass'n v. Federal Power, 259 F.2d 921, 925 (D.C. Cir. 1958)). See Zirkle v. District of Columbia, 830 A.2d 150, 1256-1257 (D.C. 2003) ("For it is well established that economic and reputational injuries are generally not irreparable.").

Appellant's claim that the Board's restriction will take away seventy (70) percent of his clients and force him to close his business is lacking and without proof. "An injunction will not be granted on the ground merely of an anticipated danger or an apprehension of it, but there must be a reasonable probability that injury will be done if no injunction is granted." Hamlin v. Durham, 235 Ky. 842, 32 S.W.2d 413, 414 (1930). The current restriction allows Appellant to continue to practice medicine even though he has been the subject of sixteen (16) complaints of sexual misconduct over the past nineteen (19) years and

---

doctor subsequently filed his own grievance against Appellant, which is currently pending.

[6] There is no evidence to support Appellant's claim that he will lose seventy (70) percent of his business. Further, the restriction allows him to continue to practice, where he has the opportunity to gain new patients, as long as they are male. While the inconvenience to Appellant may be substantial, it cannot be characterized as irreparable under these circumstances.

the hearing officer *actually recommended complete revocation of his license.*

Nor do we find that Appellant has established the requisite "substantial possibility" that he will prevail on the merits. To support a temporary injunction, one must show that a substantial question exists that *tends to create a "substantial possibility" that the Appellant will ultimately prevail on the merits.* See Price, 261 S.W.3d at 484 (emphasis added).

The hearing officer is charged with the duty of judging the credibility of witnesses and weighing the evidence. See Kentucky State Racing Comm'n v. Fuller, 481 S.W.2d 298, 307-308 (Ky. 1972); see also Wheatley v. Shields, 292 F. Supp. 608 (D.C. 1968). KRS 13B.150(2) states:

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . unless it finds the agency's final order is:
>
> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Without support of substantial evidence on the whole record;
>
> (d) Arbitrary, capricious, or characterized by abuse of discretion;
>
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;

(f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or

(g) Deficient as otherwise provided by law.

Therefore, the trial court could not find that there was a clear abuse of discretion when the hearing officer found that the grievant was a credible witness and that her statements were credible. Thus, the trial court abused its discretion when it held that the possible drug use and psychological history of the complainant created a substantial question (as to her credibility) supporting the trial court's issuance of the temporary injunction.

Appellant's sole assertion was that complainant's patient chart listed medication that is used primarily for treating bipolar or schizophrenia disorders. But, Appellant cannot assert that complainant has ever been treated for either of these conditions. Furthermore, as conceded by Appellant, complainant's chart was not created until *after* the complaint was filed and Appellant had received notice of it. Nonetheless, the mere fact that a complainant may, or may not, have been using prescription medication at the time of the incident does not amount to a "substantial possibility" of Appellant winning on the merits, as required under Kentucky law. The hearing officer weighed this evidence and reached the conclusions it deemed appropriate, as was his

authority to do so. <u>Com. Transp. Cabinet Dept. of Vehicle Registration v. Cornell</u>, 796 S.W.2d 591, 594 (Ky. App. 1990).

Finally, when balancing the equities of the case, it was an abuse of discretion for the trial court to rule that the equities favored Appellant. Appellant's actions during the course of the proceedings caused him to be indicted on criminal charges,[7] because he began accessing complainant's KASPER records after the complaint was filed.[8] Appellant also has a well developed pattern of behavior here that is documented by the numerous complaints filled against him.

Accordingly, we hold the trial court abused its discretion when it determined that the equities in this case favor Appellant; relying on facts such as: (1) no other complaints have been filed since the complaint in question;[9] (2) a large group of women in yellow shirts had showed up to support Appellant; and (3) that the large group had to travel a long way to support Appellant. We do not see how these factors outweigh the fact

---

[7] Unclean hands are an absolute bar to equitable relief, including injunctive relief. <u>Time Finance Co. v. Varney</u>, 253 S.W.2d 233 (Ky. 1952).

[8] KASPER stands for, Kentucky All Schedule Prescription Electronic Reporting. Physicians may access KASPER reports only for the "purpose of providing medical or pharmaceutical treatment for a bona fide current patient." KRS 218A.202(6)(e). Further, "Obtaining information under this section not relating to a bona fide specific investigation, shall be a Class D felony for the first offense and a Class C felony for each subsequent offense." KRS 218A.202. Appellant attempted to access complainant's KASPER records after she had terminated her doctor-patient relationship with Appellant. Therefore, pursuant to these repeated violations, Appellant was indicted on nine (9) felony charges regarding his improper accessing of these KASPER records.

[9] We note again that there *has been* another complaint filed, this one by an employee of Appellant who stated "he could no longer look into the eyes of the women he [Appellant] had sexually molested."

that Appellant has had numerous valid complaints filed against him, over a long period of time, that show a pattern of sexual misconduct.

Appellant has not established that there is a substantial possibility that he will prevail on the merits, nor has he satisfied the irreparable harm requirement, or shown that the equities in the case favor him. Women patients are entitled to a doctor who practices good medicine. They should not be at the mercy of a physician who has repeatedly committed sexual misconduct.

Therefore, Appellant has failed to demonstrate the "extraordinary cause" necessary for relief from the Court of Appeals' ruling. Because we agree with the determination of the Court of Appeals and find that the trial court abused its discretion, Appellant's motion for relief under CR 65.09 is hereby denied.

All sitting. All concur.

ENTERED: May 21, 2009.

_____
CHIEF JUSTICE