TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000595-I

FINAL
DATE 10/20/16 _Kim Redmon, DC_

SCOTTY HEDGESPETH
LINDA CUNDIFF

MOVANTS

ON REVIEW FROM COURT OF APPEALS

V.          CASE NO. 2015-CA-001401-I
          TAYLOR CIRCUIT COURT NO. 15-CI-00178

TAYLOR COUNTY FISCAL COURT

RESPONDENT

## OPINION AND ORDER

## DENYING INTERLOCUTORY RELIEF

Scotty Hedgespeth and Linda Cundiff ("Hedgespeth"), pursuant to

Kentucky Rule of Civil Procedure (CR) 65.09, move this court to grant

interlocutory relief from the Order entered by the Court of Appeals affirming

the Taylor Circuit Court's denial of injunctive relief. Having reviewed the

motion and the record, this Court now denies the motion for the relief

requested for failure to show extraordinary cause.

### FACTUAL AND PROCEDURAL BACKGROUND

Hedgespeth owns real property on both sides of what is known as Jones

Creek Road in Taylor County. The road proceeds northward from state road

1252 until it reaches Jones Creek, where it forks. At the creek, the western

fork of the road is slanted towards the east, continues across a bridge, and

resumes in a northeasterly direction. Due to the sharp orientation of the road

and narrow nature of the bridge, it is difficult for larger vehicles to maneuver the bridge. As a result, larger vehicles avoid the bridge, through the use of the unpaved eastern fork, which bypasses the bridge. The bypass goes directly over the creek bed itself.

The Taylor County Fiscal Court devised a plan to replace the existing bridge with a new one which would be erected where the bypass is currently situated. In response, Hedgespeth filed suit against the Taylor County Fiscal Court alleging ownership of the land where the bridge would be constructed. In his Complaint, Declaration of Rights, and Jury Demand, Hedgespeth articulated actions to quiet title and for inverse condemnation.

Additionally, Hedgespeth requested that the trial court issue a temporary injunction pursuant to CR 65.04, to prevent the construction of the new bridge. Hedgespeth sought to stop the construction of the bridge pending the determination of the trial court as to the ownership of the land where the bridge would be located. On August 7, 2015, the trial court held a hearing on the motion for a temporary injunction. On August 25, 2015, the trial court denied the request for a temporary injunction.

Subsequently, Hedgespeth requested that the Court of Appeals grant him interlocutory relief from the order of the trial court pursuant to CR 65.07. The Court of Appeals denied the motion, holding that the trial court did not abuse its discretion in denying Hedgespeth's request for a temporary injunction. Hedgespeth now requests this Court grant him interlocutory relief from the decision of the Court of Appeals pursuant to CR 65.09.

2

## ANALYSIS

Our review is limited under CR 65.09. As we have previously emphasized, only those cases presenting "extraordinary cause" are worthy of review. *See, e.g., Norsworthy v. Kentucky Bd. of Med. Licensure,* 330 S.W. 3d 58, 61 (Ky. 2009). We have interpreted "extraordinary cause" to include "abuse[] of discretion by the courts below[.]" *Price v. Paintsville Tourism Comm'n,* 261 S.W.3d 482, 483 (Ky. 2008).

The standard for a trial court reviewing a motion for a temporary injunction is prescribed by CR 65.04. The trial court is mandated to deny injunctive relief unless it finds: "(1) that the movant's position presents 'a substantial question' on the underlying merits of the case . . .; (2) that the movant's remedy will be irreparably impaired absent the extraordinary relief; and (3) that an injunction will not be inequitable." *Id.* at 484.

The trial court went through the proper analytical steps and determined that Hedgespeth failed to meet each of these requirements. In denying interlocutory relief, the Court of Appeals conducted a careful review of the findings of the trial court. We review the judgment of the Court of Appeals on each issue to determine whether it abused its discretion in denying interlocutory relief.

First, the Court of Appeals evaluated the trial court's conclusion that Hedgespeth had not presented a substantial question concerning the underlying merits of the case. This conclusion was based on the evidence

3

presented to the trial court during the injunction hearing. Deeds and maps were admitted as exhibits that strongly supported a finding that Jones Creek Road was publicly used, as opposed to being a private road surrounded by private property. Specifically, several of the county maps designated Jones Creek Road as a "county road." Additionally, one of the maps indicated that the road had been used as a country road since as early as 1969. Further, a copy of the deed transferring the property to Hedgespeth's father states that, "[i]t is understood and agreed that a county road now runs through said property as is to remain in its present location."

There was also evidence that the county had maintained the road since the 1970s. Maintenance of the road included graveling, paving, mowing, tile installations and bridge building. However, the county's maintenance was not limited to the paved portion of the road. The two forks of Jones Creek Road reconnect after crossing on the bridge located on the western fork of the road or after traveling through the creek bed on the eastern fork of the road. Where the forks reunite, the county poured a large area of concrete for safety purposes. Additionally, to facilitate travel through the creek bed on the unpaved eastern fork of the road, the county built a concrete slab on the north bank of the creek. So the county had previously treated both forks as part of the county road.

Also, evidence was heard concerning the public's continued use of the bridge. Use of the bridge was not limited to local residents, but also included use by commercial and service vehicles. Hedgespeth himself admitted that he

4

had seen increased public traffic on the bridge in recent years. After reviewing these facts the Court of Appeals determined that the trial court's conclusion that Hedgespeth did not have a substantial likelihood of prevailing on the underlying merits was not clearly erroneous.

Second, the Court of Appeals evaluated the trial court's conclusion that the equities did not weigh in favor of Hedgespeth. Hedgespeth argued that there was no public interest to protect as only property owners and their invitees used the road. However, the trial court determined that the public does use the road, including the bypass, and that the public's need for continued use of the bridge and a safe replacement was not outweighed by Hedgespeth's desire to delay construction.

Finally, the Court of Appeals evaluated the trial court's conclusion that Hedgespeth had not shown that he would suffer any type of irreparable harm. Hedgespeth argued that the new bridge would alter the use or character of his property, and in particular, could cause loss of trees and other vegetation. However, there was no evidence presented to the trial court that any trees would be removed in the construction of the new bridge. During the hearing, when Hedgespeth was shown an aerial photo of the existing bypass where the new bridge would be built, he admitted that there were no trees present in that location.

The trial court concluded that there will be no change to the nature of the property through the construction of the new bridge. There was testimony that vehicles already use the bypass over the creek bed to avoid the use of the

5

bridge, and the construction of a safer roadway at that same location would not result in a change to the way the property is currently being used. Further, the trial court concluded that if the road in question is private property rather than a county or public road, then Hedgespeth could be appropriately compensated for any loss. After reviewing these facts the Court of Appeals determined that the trial court's conclusion that Hedgespeth had not shown that he would suffer any type of irreparable harm was not clearly erroneous.

Hedgespeth disagrees with the determinations of the trial court and the Court of Appeals as to each of the three *Price* factors. Specifically, Hedgespeth argues that the trial court and the Court of Appeals abused their discretion when they concluded that he could be appropriately compensated for any loss incurred through normal legal channels. In his Complaint, Declaration of Rights, and Jury Demand, Hedgespeth articulated actions to quiet title and for inverse condemnation. In his argument concerning inverse condemnation, Hedgespeth argues that even if the Court determined that taking to be for a public use or that it was taken in good faith that the Fiscal Court failed to act in accordance with Kentucky Revised Statutes (KRS) 416.540, et seq., the Eminent Domain Act of Kentucky.

Additionally, Hedgespeth asserts that if the Court fails to grant an injunction, the Taylor County Fiscal Court will be able to enter Hedgespeth's property without affording him the protections of Sections 1, 13, and 242 of the Kentucky Constitution and the Eminent Domain Act. Hedgespeth insists that the Fiscal Court must establish it has the right to condemn the property in

dispute. Then after the trial court makes a determination about whether the Fiscal Court has such a right, a jury determines the appropriate amount of compensation. By not following this procedure, Hedgespeth argues that he would be precluded from ever asserting his rights to this property again, a circumstance which would constitute the requisite irreparable harm.

Hedgespeth's argument runs contrary to long settled Kentucky law. In *Shaw v. Morrison et al.*, 259 S.W. 707 (Ky. 1924) Shaw sought the removal of a tile constructed at the instance of the fiscal court. The tile served to drain a pond, which was necessary for the protection of a fill in the public highway. *Id.* Shaw alleged that the tile interfered with the natural drainage of the land, resulting in water flowing upon and causing damage to his land. *Id.* Our predecessor Court denied Shaw's request for a mandatory injunction to compel removal of the tile. *Id.* at 708. While the Court acknowledged that the injury was permanent, it was not irreparable; rather the injury was "slight and easily ascertainable." *Id.* The proper remedy for that injury would be to seek monetary damages, rather than to require the removal of the tile. *Id.*

A similar issue was addressed in *Kentucky Elec. Dev. Co.'s Receiver v. Wells*, 75 S.W.2d 1088, 1089 (Ky. 1934) where a new dam was constructed which adversely impacted Wells's property. The Kentucky Electric Development Company had been granted the right to erect a dam for gristmill purposes, but the new dam exceeded the height permitted for that purpose. *Id.* As a result, Wells's property and crops suffered injury. *Id.* The trial court awarded Wells damages and issued a mandatory injunction ordering the

7

company to lower the height of the dam. *Id.* at 1090. In reversing the judgment of the trial court, our predecessor Court reasoned that the removal of the dam would impose an undue hardship which would be out of proportion to the injury alleged by Wells. *Id.* Rather, the Court determined that the recovery of damages would afford an adequate remedy for any injuries caused by the presence of the dam. *Id.* at 1094.

It is clear from *Shaw* and *Wells* that the entry of the agents of the Taylor County Fiscal Court onto Hedgespeth's land would not constitute an irreparable injury. Rather, if the intrusion into Hedgespeth's land is later found to be wrongful, Hedgespeth may seek redress for his injuries through a request for damages commensurate with the injury caused. Additionally, with the more than adequate fact finding and legal conclusions of the trial court, we must conclude that none of the criteria set forth in *Price* were met and, consequently, the action of the trial court in denying the temporary injunction was not clearly erroneous.

Similarly, based on its well reasoned opinion we do not find that the Court of Appeals abused its discretion in denying Hedgespeth interlocutory relief. First, based on the evidence presented to the trial court, there is not a substantial likelihood that Hedgespeth will prevail on the merits. There is a more than colorable argument that Jones Creek Road is a public road, which is supported by maps, deeds, and testimony concerning the county's use and maintenance of the road.

8

However, the dissent argues that the Taylor County Fiscal Court does not have any legal right to the ground underlying the new bridge and the rerouted highway. The dissent reaches these conclusions by relying on a flawed premise—that the land on which the Taylor County Fiscal Court desires to build the new bridge belongs to Hedgespeth. Further, the dissent claims that the ownership of that land is not in dispute.

This view is contradicted by both the arguments of the Taylor County Fiscal Court and the findings of the trial court. First, the Taylor County Fiscal Court explicitly claims ownership of the whole of Jones Creek Road. This includes both the paved western fork of the road and the unpaved eastern fork of the road, where the Taylor County Fiscal Court seeks to build a new bridge. As noted above, the Taylor County Fiscal Court maintains the whole of Jones Creek Road, including the unpaved portion of the eastern fork which transverses the creek bed.

Additionally, in requesting a temporary injunction Hedgespeth asserted his ownership of the whole of Jones Creek Road, i.e., he denied that any part of it was a county road. During the hearing on his motion for a temporary injunction the trial court heard testimony and received multiple exhibits from both parties, which included deeds, historical construction plans of a nearby road, illustrations of the subject property which included depictions of the road and creek, and aerial and satellite photographs of the area. The trial court, in its role as fact finder concluded that the evidence presented during the hearing contradicted Hedgespeth's argument. The trial court concluded that the deeds

9

and maps were strong evidence that the road was public in nature as opposed to being Hedgespeth's private property.

In sum, Hedgespeth's alleged ownership of Jones Creek Road is contested by the Taylor County Fiscal Court and his claim of ownership was implicitly rejected by the trial court in its denial of his motion for a temporary injunction. Reviewing the factual determinations and conclusions of the trial court and Court of Appeals we conclude that there is not a substantial likelihood that Hedgespeth will prevail on the merits.

Second, the equities do not weigh in favor of Hedgespeth's desire for an injunction to delay construction. As our predecessor Court said in *Wells*, "[a]n injunction ought not to be granted where the benefit secured by it to the party applying therefore is comparatively small, while it will operate oppressively and to the great annoyance and injury of the other party and to the public . . . ." 75 S.W.2d at 1095. If an injunction were granted it would delay the construction of a bridge that the Taylor County Fiscal Court has determined is necessary to safely transverse a portion of Taylor County. The need of the public to have a safe transportation route on a road that is currently in use is not outweighed by the potential speculative injury to Hedgespeth's property.

Finally, as was addressed previously, Hedgespeth is unable to demonstrate irreparable harm. There was testimony outlining that the proposed bridge would not change the character of his property. Further, the potential injuries Hedgespeth outlined, principally loss of trees and other vegetation, appear to be unlikely based on the photographic evidence presented

10

during the hearing. Should the trial court determine that Jones Creek Road is a private rather than a county road, Hedgespeth can seek damages for the taking of his property.

As Hedgespeth has failed to show "extraordinary cause," his motion for interlocutory relief from the order of the Court of Appeals is **DENIED**.

All sitting. Minton. C.J.; Cunningham, Hughes, Keller, and Wright, JJ., concur. Venters, J., dissents by separate opinion in which Noble J., joins.

VENTERS, J., DISSENTING: I respectfully dissent. Despite the county's effort to obscure the facts about its lack of ownership of the land upon which it is about to build a new concrete bridge, one glance at the exhibit containing the satellite view photo of the area exposes the truth. The location of the new bridge and the re-routed roadway deviates grossly from the path of Jones Creek Road's 30-foot right-of-way. It detours widely off the current roadbed and well into the land owned by Hedgespeth. The county's ownership of the existing Jones Creek Road is totally immaterial because the new bridge is not being placed upon the existing right-of-way.

It is conceded by all that the location of the new bridge is included within Hedgespeth's deed and that Taylor County has neither deed, nor legal title, nor even colorable title, to the ground underlying the new bridge and the rerouted highway. In its best case scenario, the county has evidence that in recent years some vehicles travelling the Jones Creek Road choose to avoid the sharp curve in the road at the site of the current bridge by dropping away from the existing roadway and driving directly through the shallow creek over the land

11

owned by Hedgespeth. The county has presented no evidence at all to show that this burden over Hedgespeth's land has been of sufficient character and quality, and of sufficient duration, to establish a permanent public right-of-way, much less to vest the Taylor County government with the authority to build a concrete bridge and roadway over it.[1] "Easements are not favored and the party claiming the right to an easement bears the burden of establishing all the requirements for recognizing the easement." *Carroll v. Meredith*, 59 S.W.3d 484, 489-490 (Ky. App. 2001); *Cary v. Pulaski County Fiscal Court*, 420 S.W.3d 500, 509 (Ky. App. 2013).

Moreover, even if the county had acquired a legally-enforceable easement over the affected area of Hedgespeth's land, it still faces the well-established rule that "easements may not be enlarged on or extended so as to increase the burden on or interfere with the servient estate." *Department of Fish & Wildlife Resources v. Garner*, 896 S.W.2d 10, 14 (Ky. 1995). Paving a 30-foot roadway and building a concrete bridge where none previously existed indisputably increases the burden upon the servient estate.

Since the drafting of Magna Carta over 800 years ago and the institution of the Anglo-American rule of law tradition, it is fundamental that the government is restrained by the law and that our Constitutions were written to constrain the authority of government. Section 13 of the Kentucky

---

[1] Although better suited for discussion upon another occasion, it is far from certain that a government ever acquires actual legal ownership of property simply because the property has been subject the regular and recurrent prescriptive use by local travelers over the requisite term of years.

12

Constitution forbids the government from taking anyone's property for public use "without the consent of his representatives and without just compensation *being previously made*." (Emphasis added.) I emphasize the mandate for compensation to the property owner before the taking. Justice Cunningham recently said in the context of Fourth Amendment liberty: "A citizen's greatest fortification against government intrusion into his or her home is the Fourth Amendment itself, not a lock."[2] Justice Cunningham eloquently captured the principle that should prevail here with respect to Section 13. No power of government is stronger than our written Constitution because we hold that the government is required to obey the law. Our faith is in the written law and nothing more than the written law should be required to protect one's rights.

In 1976, our legislature enacted the Kentucky Eminent Domain Act, KRS 416.540 to 416.680, providing clear and simple procedures for county officials to follow when they need to legally acquire a right-of-way for highway improvements and other public works. None of those procedures have been followed here. The unassailable evidence shows that Taylor County lacks legal title to the land it seeks to occupy with a concrete bridge. At best, it produced only sketchy evidence of a prescriptive easement claim. We should not turn a blind eye toward the county's "shoot first and ask questions later" approach. Our acknowledgment that Hedgespeth can bring reverse-condemnation action is a poor substitute for injunctive relief compelling the county to follow the law.

---

[2] *Milam v. Commonwealth*, ___ S.W.3d ___, 2015 WL 2266366 at *3 (Ky. May 14, 2015).

13

Every county official involved in this project took the oath to support the Constitution of Kentucky, and that oath did not exclude Section 13. The same officials also swore to "faithfully execute" their respective offices "according to law," and that law includes the Eminent Domain Act of Kentucky. In *Boone Creek Properties, LLC v. Lexington-Fayette Urban County Board of Adjustment*, 442 S.W.3d 36 (Ky. 2014) we held that a local government seeking to immediately and temporarily enjoin a violation of its laws need not demonstrate the specific immediate and irreparable injury it would suffer. Immediate relief was available because the irreparability of the harm arising from a government's inability to enforce its laws was implied. We recognized that:

> For a representative government that draws its authority from the respect, good will, and consent of the people, rather than by the force of its armed police and military, the ability to promptly eliminate ongoing violations of laws enacted by the people's representatives is essential to the ability to govern and maintain order in the community. Its inability to do so is injurious and harmful to the government and the community it serves.

442 S.W.3d at 40. I respectfully suggest that the opposite is also true. When local officials deliberately ignore statutes designed to implement the due process rights and fundamental liberties of citizens, and permanent concrete structures are about to be erected on land for which the government has made no compensation, immediate and irreparable injury follows. I would grant the requested injunctive relief and prohibit the anticipated permanent injury to

14

Hedgespeth's land until the county established its authority over the land in accordance with the statutory procedures described above.

Noble, J., joins.

ENTERED: May 5, 2016.

CHIEF JUSTICE

# Supreme Court of Kentucky

2015-SC-000595-I

SCOTTY HEDGESPETH, ET AL                                    MOVANTS

                    ON REVIEW FROM COURT OF APPEALS
V.                      CASE NO. 2015-CA-001401
                  TAYLOR CIRCUIT COURT NO. 15-CI-00178

TAYLOR COUNTY FISCAL COURT                              RESPONDENT


## ORDER DENYING MOTION TO RECONSIDER

The Motion to Reconsider, filed by the Movants, of the Opinion and Order of the Court, entered May 5, 2016, is DENIED.

All sitting. Minton, C.J., Cunningham, Hughes, Keller, Noble, Wright, JJ., concur. Venters, J., would grant.

ENTERED: October 20, 2016.

_____
CHIEF JUSTICE