RENDERED:  OCTOBER 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1564-MR

SURESH KODALI, M.D.                                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE A. C. MCKAY CHAUVIN, JUDGE
            ACTION NO. 19-CI-000317

COMMONWEALTH OF
KENTUCKY, BOARD OF
MEDICAL LICENSURE                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; TAYLOR AND L. THOMPSON,
JUDGES.

CLAYTON, CHIEF JUDGE:  Suresh Kodali, M.D., appeals from an opinion and

order of the Jefferson Circuit Court affirming a final order of indefinite restriction

on his medical license issued by the Kentucky Board of Medical Licensure.  The

Board imposed the restriction based on a finding that Dr. Kodali had behaved inappropriately with one of his female patients. Upon review, we affirm the opinion and order of the circuit court.

Dr. Kodali has been licensed to practice psychiatry in Kentucky since 1986. In 2015, he began treating a female patient ("Patient A") for Attention Deficit Hyperactivity Disorder. Patient A attended monthly appointments with Dr. Kodali at which she received a renewal of a prescription for her condition.

On June 24, 2017, Patient A filed a written grievance against Dr. Kodali with the Board. It stated that at her monthly appointment with Dr. Kodali on April 25, 2017, he had seemed friendlier than usual and wanted to give her a hug, which she thought was "weird." On her next visit, which took place on May 23, 2017, he became even friendlier. He wrote out her prescription and handed it towards her. As she approached him, he stood up from his desk and hugged her. She reported that he then tried to stick his hand up her shirt to touch her breasts. She felt uncomfortable, pulled away and told him she had to leave. Dr. Kodali told her he was sorry. She made a follow up appointment for June 20, 2017, but did not keep it. She explained that initially she did not plan to report the incident but changed her mind when her fiancé pointed out "who knows who else he is doing it to."

After Patient A filed her grievance, a medical investigator for the Board conducted interviews with Patient A and Dr. Kodali. Patient A repeated the allegations in her grievance and stated that there were no witnesses in the room and she did not say anything to the office staff about the incident. Dr. Kodali did not remember having any issues with Patient A, whom he described as a friendly and pleasant person. He did not remember hugging or having any physical contact with her. He recalled that she made an appointment to return on June 20, 2017, but did not keep it.

The Board's Inquiry Panel chose to keep the investigation open and Dr. Kodali entered into an interim agreed order which required him to schedule an assessment at the Vanderbilt Comprehensive Assessment Program for Professionals (VCAP). The assessment included the administration of a polygraph examination. Dr. Kodali's counsel objected to the use of the polygraph, and Dr. Kodali's evaluation was rescheduled with the express understanding he would not submit to a polygraph examination. He completed the evaluation, without participating in the polygraph examination, on March 5-6, 2018.

The VCAP evaluation report explained that Dr. Kodali's refusal to take a polygraph had hindered VCAP from completing an accurate assessment of his fitness to practice. It stated in part:

> Dr. Kodali's extreme defensiveness on all testing
> suggests the need to rely more heavily on collateral

information to obtain an accurate assessment of his functioning. Our collateral sources of information have been limited to the information received from KBML and a conversation with Dr. Kodali's office manager.

Based upon this limited evaluation we are not prepared to make a statement on Dr. Kodali's fitness to practice. The Federation of State Medical Boards Guidelines for evaluation of sexual boundary complaints recommends the use of polygraph examination in assessing physician boundary violations. It is our practice to utilize polygraph testing to clarify discrepancies between the account of the physician and the alleged victim.

The report concluded that its evaluation was "incomplete and indeterminate" because it could not "resolve the discrepancy between the statement of the alleged victim and Dr. Kodali's denial in the context of his marked and pervasive defensiveness."

On June 5, 2018, having reviewed the investigation, the Board issued a complaint charging Dr. Kodali with violating Kentucky Revised Statutes (KRS) 311.595(9), which subjects a physician to discipline if he or she "[e]ngaged in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public or any member thereof[.]" Dr. Kodali filed an answer denying the allegations.

An administrative hearing was held on August 8, 2018. Witnesses at the hearing included Patient A, her husband (who was her fiancé at the time of the

incident), Dr. Kodali, Dr. Kodali's office manager, and the Board's medical investigator.

Dr. Kodali made several motions *in limine* prior to the final hearing, including objections to the introduction of the VCAP report and any discussion or document regarding or mentioning his refusal to take a polygraph examination. The hearing officer issued an order on the motions stating in part:

> [I]t is impossible for the hearing officer to fully recount or for the Board to fully understand the history of this action and the allegations against Dr. Kodali without reference to both the assessment and recommended polygraph examination. Therefore, the Board will be permitted to introduce at the hearing evidence related to the assessment report and to Dr. Kodali's failure to take the polygraph examination in order to provide the appropriate context for the actions of VCAP and the Board. Since the Board has not charged Dr. Kodali with any misconduct related to his refusal to take the polygraph examination, the hearing officer will not consider that refusal in making his findings or recommendations on the allegations against Dr. Kodali.

The hearing officer issued his findings of fact, conclusions of law, and recommended order on October 5, 2018. He found that "Patient A's allegations are believable and that Dr. Kodali's denial of her allegations are not." The Board reviewed the case and adopted the hearing officer's findings. It issued an order of indefinite restriction, prohibiting Dr. Kodali from consulting, evaluating, diagnosing, or otherwise providing treatment for any female patient for an

indefinite period of time. He was also required to reimburse the Board for the costs of the proceeding in the amount of $6,260.03.

Dr. Kodali filed an appeal in Jefferson Circuit Court, which affirmed the order of the Board. It stated that there was substantial evidence in the record supporting the finding that Dr. Kodali had engaged in unethical and unprofessional conduct which harmed Patient A and that the Board had correctly applied the law to the circumstances. This appeal followed.

The Kentucky Board of Medical Licensure was created by the General Assembly "to function as an independent board, the majority of whose members are licensed physicians, with the intent that such a peer group is best qualified to regulate, control and otherwise discipline the licensees who practice medicine . . . within the Commonwealth of Kentucky." KRS 311.555. Judicial review of the Board's decisions is limited. The courts may disturb an action of the Board only if it constitutes a clear abuse of discretion; is clearly beyond its legislative delegated authority; or violated the procedure for disciplinary action as described in KRS 311.591. *Id.* Where the Board's "findings of fact are supported by substantial evidence, those findings are binding on the reviewing court. This is true even though there may be conflicting evidence in the record." *Urella v. Kentucky Bd. of Medical Licensure*, 939 S.W.2d 869, 873 (Ky. 1997) (citations omitted). Issues of

law, however, we review *de novo*. *Abul-Ela v. Kentucky Bd. of Medical Licensure*, 217 S.W.3d 246, 250 (Ky. App. 2006).

Dr. Kodali contends that the hearing officer's findings of fact were not supported by substantial evidence because they ignored serious discrepancies between the account of the incident Patient A provided in her written grievance and her testimony at the hearing. In her grievance, Patient A alleged that Dr. Kodali wanted to give her a hug and tried to put his hand up her shirt to touch her breasts. At the hearing, she testified that Dr. Kodali gave her a hug. He then gave her the prescription and weighed her, which was the normal procedure. After he looked at her weight, she testified that he gave her another hug, put his hand under her shirt and that his hand touched her breast under her bra. Her husband testified that Patient A did not tell him at the time that Dr. Kodali's hand went all the way up her shirt, just that his hand went up her shirt and he tried to touch her inappropriately.

The hearing officer characterized the central issue in this case as evaluating the credibility of Dr. Kodali and Patient A, as there were no other witnesses to what had occurred in the office. Dr. Kodali contends that the discretion afforded a hearing officer in making these types of credibility determinations must have some limit and that the circuit court erroneously accepted the hearing officer's findings without considering the discrepancies in

Patient A's testimony. Dr. Kodali stresses that his version of what occurred never wavered, whereas Patient A made "self-serving" changes in her testimony.

The hearing officer addressed each of Dr. Kodali's allegations that Patient A was not credible. He acknowledged the discrepancies in her descriptions of what occurred but concluded they did not fundamentally undermine her contention that Dr. Kodali behaved inappropriately by either hugging or trying to hug her, and put his hand under her shirt and either tried to touch or succeeded in touching her breast. The hearing officer found Patient A's behavior and her explanations for it believable and he fully accounted for and addressed Dr. Kodali's assertions to the contrary. This type of assessment of the evidence is within the exclusive purview of the hearing officer. "The hearing officer is charged with the duty of judging the credibility of witnesses and weighing the evidence." *Norsworthy v. Kentucky Bd. of Medical Licensure*, 330 S.W.3d 58, 63 (Ky. 2009). Patient A's testimony constituted substantial evidence and the discrepancies Dr. Kodali complains of are simply not significant enough to undermine the findings of the hearing officer.

Dr. Kodali further argues that the hearing officer improperly relied on his refusal to submit to a polygraph examination, even after stating he would not. Although the hearing officer did discuss the polygraph issue, he only did so in order to explain that the Board did not include a charge against Dr. Kodali for

violating the terms of the agreed order, which required him to complete the VCAP assessment. He only made this observation after stating he found Patient A to be credible based upon his review of her and Dr. Kodali's testimony.

Thus, although the hearing officer discussed Dr. Kodali's refusal to take the polygraph examination at some length, he only did so after he had already made the credibility determination regarding Patient A's allegations. Indeed, he emphasized that Dr. Kodali's refusal to take the polygraph examination was not the basis of the Board's charges against him. When read in its entirety, the hearing officer's recommended order did not improperly use Dr. Kodali's refusal to take the polygraph examination as evidence of guilt.

Finally, Dr. Kodali argues that the hearing officer engaged in impermissible burden shifting in his findings concerning a disagreement between Patient A and Dr. Kodali which occurred several months before the incident at issue. Dr. Kodali told VCAP that he and Patient A had a disagreement after he refused to provide her with a letter excusing her from a training program.

The hearing officer explained that Dr. Kodali had informed VCAP of the disagreement, but that he had discounted its significance, describing Patient A as only a "little upset" and continuing her treatment with him. At the administrative hearing, Dr. Kodali did not offer any other testimony or evidence regarding Patient A having been upset with him for refusing to provide the medical

excuse. The hearing officer observed that "[o]ther than his failure to provide her with a medical excuse, Dr. Kodali offered no opinion based upon Patient A's treatment history or upon his interactions with her why she may have missed her last scheduled appointment, terminated their professional relationship, or fabricated the allegations against him."

Dr. Kodali argues that the hearing officer's statements demonstrate that he had placed the burden on him to prove Patient A's allegations were untrue. He contends that this impermissibly shifted the burden from the Board which bears the burden by the preponderance of the evidence. *See* KRS 13B.090(7).

The hearing officer's statements explore Patient A's possible motives for fabricating allegations against Dr. Kodali and also demonstrate that Dr. Kodali was provided with the opportunity to explain what he thought might be the motive for Patient A's allegations. The statements do not constitute an impermissible shifting of the burden of proof to Dr. Kodali.

For the foregoing reasons, the opinion and order of the Jefferson Circuit Court affirming the order of the Board is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

C. Mike Moulton
Elizabethtown, Kentucky

BRIEF FOR APPELLEE:

Sara Farmer
Louisville, Kentucky